**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF KANSAS**

| | |
|---|---|
| **CELESTE M. COFFLAND,** | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Case No. 14-1115 |
| | ) |
| **CAROLYN W. COLVIN,** | ) |
| **Acting Commissioner of Social Security,** | ) |
| | ) |
| Defendant. | ) |
| | ) |

**MEMORANDUM AND ORDER**

Plaintiff Celeste M. Coffland seeks disability insurance benefits pursuant to Title II of the Social Security Act. An Administrative Law Judge ("ALJ") found that plaintiff was not disabled, and that finding stands as the final decision of the Commissioner of Social Security ("Commissioner"). Plaintiff asserts that the ALJ erred in determining her migraine headaches were not severe and that the ALJ failed to provide a narrative discussion of how the evidence of record supported the ALJ's residual functional capacity ("RFC") findings. For the reasons stated below, the court affirms the Commissioner's decision.

**I.   Legal Standard**

The court must determine whether the Commissioner's final decision is "free from legal error and supported by substantial evidence." *Walls v. Astrue*, 561 F.3d 1048, 1052 (10th Cir. 2009). Accordingly, this court applies a two-pronged review of the ALJ's decision: (1) Are the factual findings supported by substantial evidence in the record? (2) Did the ALJ apply the correct legal standards? *Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir. 2007) (citation omitted). "Substantial evidence" is a term of art, meaning "more than a mere scintilla" and "'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Hunter v. Astrue*, 321 F. App'x

-1-

789, 792 (10th Cir. 2009) (quoting *Flaherty v. Astrue*, 515 F.3d 1067, 1070 (10th Cir. 2007)).  When evaluating whether the standard has been met, the court is limited; it may neither reweigh the evidence nor replace the ALJ's judgment with its own.  *Bellamy v. Massanari*, 29 F. App'x 567, 569 (10th Cir. 2002) (citing *Kelley v. Chater*, 62 F.3d 335, 337 (10th Cir. 1995)).  On the other hand, the court must examine the entire record—including any evidence that may detract from the ALJ's decision.  *Jarmillo v. Massanari*, 21 F. App'x 792, 794 (10th Cir. 2001) (citing *Glenn v. Shalala*, 21 F.3d 983, 984 (10th Cir. 1994)).

## II. Analysis

Plaintiff was forty-nine years old on the date she alleges she became disabled.   Plaintiff has a high school education with three years of college and vocational training in cosmetology.  Her past relevant work was as a receptionist and claims clerk.  Plaintiff filed an application for disability insurance benefits based primarily on her allegations of chronic back pain; migraines; lumbar disc degeneration; osteoarthritis; fusing of vertebrae; herniated bulging discs; depression; lack of concentration; scoliosis; and gerd insomnia obesity myalgia myositis.  (Doc. 11 at 249.)  Plaintiff alleges she became disabled on December 11, 2012.

The ALJ considered plaintiff's claims and concluded that plaintiff had the following severe impairments:  depression; mild cervical spondylosis with multilevel degenerative disc disease; mild to moderate lumbar spondylosis; and moderate levoscoliosis with multilevel degenerative disc disease. (*Id.* at 18.)  With respect to plaintiff's migraines, the ALJ found that impairment was not severe, (*id.*), a finding which plaintiff claims was erroneous.  Ultimately, the ALJ concluded that plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1.  (*Id.* at 18–19.)

The ALJ went on to assess plaintiff's RFC as follows:

> After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform light work (lift or carry 20 pounds occasionally and 10 pounds frequently, stand or walk for six hours out of an eight-hour workday and sit for six hours out of an eight-hour workday) as defined in 20 CFR 404.1567(b) and 416.967(b) except: She must have the ability to alternate between sitting and standing every 45 minutes, for a brief position change of 5 minute maximum, and then continue working at the work station. The claimant is limited to understanding, remembering and carrying out simple, routine repetitive tasks, consistent with unskilled work. She is limited to occasional climbing of ramps, stairs, ladders, ropes, or scaffolds. She can occasionally balance,stoop, and crouch. She can perform no more than occasional overhead reaching. She must avoid concentrated exposure to extreme cold, and work hazards such as moving machinery and unprotected heights.

(*Id.* at 19–20.)  Plaintiff argues that the ALJ failed to provide a narrative discussion in assessing her RFC.  The court now turns to plaintiff's two claims of error.

### A.  Plaintiff's Migraine Headaches

Plaintiff claims that the ALJ erred in finding her migraine headaches were not severe.  An impairment, or combination of impairments, is severe only if it significantly limits a claimant's ability to do basic work-related activities like walking, standing, sitting, lifting, pushing, pulling, reaching, carrying, handling, seeing, hearing, and speaking.  *See Bowen v. Yuckert*, 482 U.S. 137, 146 (1987); 20 C.F.R. §§ 404.1520(c), 404.1521.  While this step requires a "de minimis" showing of impairment, *see Hawkins v. Chater*, 113 F.3d 1162, 1169 (10th Cir. 1997) (citation omitted), the claimant must show more than the mere presence of a condition or ailment, *see Bowen*, 482 U.S. at 153 (stating that step two is designed to identify "at an early stage" claimants with such slight impairments they would be unlikely to be found disabled even if age, education, and experience were considered).  Presumptively, if the medical severity of a claimant's impairments is so slight that the impairments could not interfere with or have a serious impact on the claimant's ability to do basic work activities, irrespective of vocational factors, the impairments do not prevent the claimant from engaging in

substantial gainful activity. *Williams v. Bowen*, 844 F.2d 748, 751 (10th Cir. 1988). Thus, at step two, the ALJ looks only at the claimant's impairment or combination of impairments and determines the impact the impairment would have on her ability to work. *Hinkle v. Apfel*, 132 F.3d 1349, 1352 (10th Cir. 1997).

Here, the ALJ found at step two that plaintiff's migraine headaches were not severe:

> She also alleges chronic migraine headaches, not evaluated by a headache specialist and with no objective medical evidence to support the etiology of her headaches or maximize treatment. Therefore, there is no clear evidence that they result in more than minimal limitations or cannot be controlled with medication.

(Doc. 11 at 18.) For the reasons set forth below, the court finds that the ALJ's finding is supported by substantial evidence in the record.

The record evidence shows that medication relieved plaintiff's headaches. For example, in June 2011, plaintiff told nurse practitioner Heather McCullough that Topamax (medication used to prevent migraine headaches) had been very effective and that Imitrex (headache medication) helped when she gets a migraine headache. (*Id.* at 354.) In June 2012, plaintiff told Ziauddin Monir, M.D., that her migraine headaches were better with Topamax, which in turn reduced the dose frequency of Imitrex—she only needed Imitrex one to three times per week. (*Id.* at 384.) In October and November 2012, plaintiff reported her headaches were improved and stable with medication. (*Id.* at 392, 400.) Though plaintiff reported to Ms. McCullough that she was having more frequent migraine headaches in February 2013, plaintiff also reported only "using Imitrex several times per month." (*Id.* at 421.) Moreover, it appears from the medical notes that the migraines were being caused (at least in part) by plaintiff's increased stress because plaintiff was about to lose her home due to foreclosure. (*Id.*) On September 20, 2013, plaintiff asked nurse practitioner Joyce Shively for an increased dose of Topamax and stated that she had previously been on a higher dosage, (*id.* at 421), which indicates to the court

-4-

that the higher dose controlled her headaches. *White v. Barnhart*, 287 F.3d 903, 909–10 (10th Cir. 2001) (stating that claimant's admission that medication relieved some of her pain supported finding that claimant was capable of performing more extensive work than she acknowledged). The mere fact that plaintiff reported having migraine headaches and received treatment for them does not establish that her condition resulted in severe impairments. *Cowan v. Astrue*, 552 F.3d 1182, 1186 (10th Cir. 2008) ("[W]hile the showing a claimant must make at step two is de minimis, a showing of the mere presence of a condition is not sufficient.") (citation omitted).

The ALJ also noted a lack of objective medical evidence establishing that plaintiff suffered from debilitating migraines. Plaintiff had at least two MRI scans on her brain, one in January 2011 and one in April 2013, and the results of both came back normal. (Doc. 11 at 21–22.) Plaintiff refused various neurology referrals[1] and pain management referrals[2] despite her allegations of disabling headaches. (*Id.* at 25.) The ALJ's finding that plaintiff's migraines lacked objective medical evidence has support in the record.

Finally, the ALJ did not stop the sequential evaluation at step two. Rather, the ALJ considered the impact of plaintiff's migraine headaches at steps four and five, discussing her headaches throughout the sequential evaluation. (*Id.* at 18–27.) The ALJ detailed the diagnosis and treatment of plaintiff's migraine headaches from various providers, including Cheryl Giles, M.D., Ms. McCullough, and Ms. Shively, (*id.* at 21–24), and the ALJ discussed the results of the imaging of plaintiff's brain, (*id.* at 21–22).

Plaintiff also notes that the state agency physician, Dick A. Geis, M.D., thought plaintiff's migraine headaches were severe. (Doc. 12 at 17.) However, Dr. Geis's determination is rendered

---

[1] For example, Ms. McCullough reported on February 6, 2013, "Patient refused MRI or neurology referral." (Doc. 11 at 424.)

[2] For instance, Ms. McCullough reported on April 4, 2013, that plaintiff "was asked if she wanted to be referred to Dr. Greenfield for pain management and patient declined at this time . . . ." (Doc. 11 at 432.)

immaterial because the ALJ's RFC finding essentially mirrors Dr. Geis's opinion. (*Compare* Doc. 11 at 19–20 with Doc. 11 at 113–15.) So even assuming plaintiff's migraine headaches were severe, she has not shown or suggested what additional limitations she required as a result of her headaches that were not encompassed within the limitations set forth in the ALJ's RFC finding. Thus, even if the ALJ erred in not finding plaintiff's migraine headaches to be severe at step two, any such error was harmless. *Carpenter v. Astrue*, 537 F.3d 1264, 1266 (10th Cir. 2008) ("[A]ny error here became harmless when the ALJ reached the proper conclusion that [the claimant] could not be denied benefits conclusively at step two and proceeded to the next step of the evaluation process."). The ALJ's decision that plaintiff's migraines were not severe is supported by substantial evidence in the record and is not otherwise erroneous.

### B. The ALJ's RFC Determination

Plaintiff argues the ALJ erred in evaluating her RFC. Plaintiff claims that the ALJ did not provide a narrative discussion of the medical and non-medical evidence in making her RFC finding and did not properly weigh the medical opinions. "When the ALJ fails to provide a narrative discussion describing how the evidence supports each conclusion, citing to specific medical facts and nonmedical evidence, the court will conclude that his RFC conclusions are not supported by substantial evidence." *Wing v. Astrue*, No. 10-1043-EFM, 2011 WL 1831755, at *2 (D. Kan. May 12, 2011).

The court's review of the ALJ's decision establishes that the ALJ provided a detailed narrative discussion of the medical and non-medical evidence in making her RFC finding. In a multiple-page discussion carefully detailing the evidence at step five (Doc. 11 at 20–25), the ALJ conducted a thorough analysis of the treatment notes from all of plaintiff's medical providers, as well as plaintiff's

subjective reports.  The ALJ reviewed and compared plaintiff's objective and subjective allegations of pain in assessing plaintiff's RFC limitations.

Plaintiff also argues that the ALJ did not appropriately weigh the differing medical opinions in assessing her RFC.  The court disagrees.  The record in this case included various medical opinions, including a physical therapist after a functional capacity evaluation, a chiropractor, and the state agency physician regarding plaintiff's physical limitations.   In January 2011, physical therapist Dawn Massy concluded after testing that plaintiff had no limitations in her ability to sit and could stand and walk about six hours in an eight hour workday with shifting positions at will.  (*Id.* at 521.)  Ms. Massy indicated plaintiff could lift twenty-five pounds occasionally, 12.5 pounds frequently, and five pounds continuously; perform tight gripping; occasionally bend, climb stairs, crouch, crawl, and kneel; and frequently reach.  (*Id.* at 521–22.)

On March 12, 2013, chiropractor John E. Chance stated on a form that plaintiff could lift and carry only five pounds frequently and ten pounds occasionally; stand and/or walk thirty minutes at a time and less than one hour in an eight-hour workday; sit thirty minutes at a time and less than one hour in an eight-hour workday; occasionally climb, balance, kneel, reach, finger, feel, see, speak, and hear; and never stoop or crawl.  (*Id.* at 419–20.)  He said that plaintiff had to lie down for fifteen to twenty minutes every three to four hours.  (*Id.* at 419.)

In May 2013, Dr. Geis reviewed the record (although he did not have Ms. Massey's report to review when he evaluated the evidence), and concluded that plaintiff could lift and carry twenty pounds occasionally and ten pounds frequently; could stand and or walk about six hours in an eight-hour day; could sit about six hours in an eight-hour day; could occasionally climb, balance, stoop, crouch, and reach overhead; and had to avoid concentrated exposure to vibration, and hazards such as machinery and heights.  (*Id.* at 113–14.)

In formulating her RFC finding, the ALJ weighed these opinions, concluding that chiropractor Chance's opinion was entitled to little weight. The ALJ correctly considered the chiropractor's opinion as not being defined as an acceptable medical source. *See Barnett v. Apfel*, 231 F.3d 687, 690 (10th Cir. 2000) (upholding ALJ's rejection of treating chiropractor's opinion, noting chiropractor was not included in list of "acceptable medical sources") (citing 20 C.F.R. § 404.1513(a) & (e) (excluding chiropractors from the list of "acceptable medical sources")). This is important because "only 'acceptable medical sources' can be considered treating sources, as defined in 20 CFR 404.1502 and 416.902, whose medical opinions may be entitled to controlling weight." SSR 06-03p, 2006 WL 2329939, at *2 (citation omitted). Accordingly, the ALJ correctly concluded that chiropractor Chance's opinion is not eligible for controlling weight.

The ALJ also indicated the objective medical evidence contradicted chiropractor Chance's opinion. Plaintiff was given regular advice to exercise, (Doc. 11 at 359, 366, 380, 479, 483, 490, 494, 496), which is inconsistent with the chiropractor's opinion of such severe limitations. Moreover, examinations by plaintiff's other medical providers conflicted with the chiropractor's opinion. For instance, examinations showed plaintiff was well-appearing and had a normal affect, mood, and speech, with no impairment in her thought content, normal gait, station, reflexes, and sensation. (*Id.* at 355, 358, 369–70, 373-74, 373–75, 382–83, 386, 423–24, 482, 477–79.) Imaging studies showed mild imaging findings. (*Id.* at 344, 435.) Also, thorough testing of plaintiff's functional abilities showed she could perform a range of light activities. (*Id.* at 521–22.) In addition, reviewing physician Dr. Geis also assessed functional limitations consistent with the demands of light work. (*Id.* at 113–16.) Therefore, the chiropractors' opinion appears to the court to be an outlying opinion unsupported by the other medical sources. *See* 20 C.F.R. § 404.1527(c)(4) (stating an ALJ must consider whether an opinion is consistent with the record as a whole).

In addition to finding the chiropractor was not an acceptable medical source and that his opinion conflicted with the objective medical evidence, the ALJ also found the chiropractor's "suggestion that the claimant is essentially bedridden is not supported by his sparse notes that do not outline the treatment given." (Doc. 11 at 23.) For all of these reasons, the court finds the ALJ appropriately gave little weight to this opinion. *See Raymond v. Astrue*, 621 F.3d 1269, 1272 (10th Cir. 2009) (stating that medical opinion did not merit controlling weight because it was "brief, conclusory, and unsupported by objective medical findings").

The ALJ also discussed and weighed the opinions regarding plaintiff's mental impairments and concluded that the opinion from social worker Evelyn Smith was entitled to little weight. (Doc. 11 at 24–25.) On September 18, 2013, Ms. Smith completed a medical source statement, indicating that she had seen plaintiff every two to three months since 2010. (*Id.* at 472.) Ms. Smith also stated that plaintiff was disabled. (*Id.*)[3]

The ALJ concluded that Ms. Smith was not a "treating source" as defined by the regulations, whose opinion would be entitled to controlling weight. (*Id.* at 24); s*ee* 20 C.F.R. §§ 404.1527(d)(2) (evaluating treating source opinions), 404.1502 (defining treating source). To establish an "ongoing treatment relationship" requires that "you see, or have seen, the source with a frequency consistent with the accepted medical practice for the type of treatment and/or evaluation required for your medical condition(s)." 20 C.F.R. § 404.1502.

Here, the evidence fails to establish that Ms. Smith was a "treating source." As detailed by the ALJ, even though Ms. Smith stated that she saw plaintiff every two to three months since 2010, there

---

[3] Ms. Smith opined that plaintiff had moderate restrictions of activities of daily living; moderate difficulties in maintaining social functioning; and moderate deficiencies of concentration, persistence, or pace. (Doc. 11 at 473.) Ms. Smith also stated that plaintiff had poor or no ability to deal with typical work stresses; fair ability to relate to co-workers, deal with customers, accept criticism from supervisors, and concentrate on job duties for two hour periods of time; and good ability to perform simple routine tasks and perform a task without interference from psychologically-based symptoms. (*Id.* at 474.)

were only three records of plaintiff seeing Ms. Smith (May 2012, June 2013, and July 2013), and plaintiff's attorney made no indication that there was treatment evidence missing from the record. (Doc. 11 at 24.) Finding no record evidence of an established treatment relationship, the ALJ afforded little weight to this opinion. The ALJ's decision was reasonable and supported by the record.

Also, beyond her statement that plaintiff was disabled and had poor or no ability to deal with typical work stresses, Ms. Smith's notes did not reveal any statements or notes sufficient to support a finding of disability, even if Ms. Smith was a treating source. At each of plaintiff's three visits, Ms. Smith found plaintiff was alert and fully oriented, and had appropriate affect, intact speech, and no thought disorder. (*Id.* at 379, 489, 495.) Ms. Smith assigned GAF scores between 55 and 65, (*id.* at 380, 490, 496), indicating mild to moderate symptoms. Ms. Smith even recommended that plaintiff participate in more activities, (*id.* at 490, 496), which is inconsistent with her stated opinion that plaintiff was disabled. Thus, the ALJ reasonably rejected Ms. Smith's opinion, as it was not supported by the overall evidence. *See Castellano v. Sec'y of Health & Human Servs.*, 26 F.3d 1027, 1029 (10th Cir. 1994) (stating that treating physician's opinion may be rejected if his conclusions are not supported by specific findings).

Under these circumstances, the ALJ reasonably accorded greater weight to the opinion of state agency psychologist Lauren A. Cohen, Ph.D., who concluded that plaintiff had severe mental impairments, but plaintiff was not significantly limited in most areas and retained the ability to pay attention long enough to complete simple to intermediate level tasks. (Doc. 11 at 115–16.) The ALJ found that Dr. Cohen's opinion was supported by the ordinary mental status findings and consistent with the evidence in the record as a whole. (*Id.* at 22.) The court agrees and finds that the ALJ's decision to give greater weight to Dr. Cohen's opinion was reasonable and supported by the record evidence. 20 C.F.R. § 416.927 (e)(2)(i) (stating that state agency medical consultants are "highly

qualified physicians . . . who are also experts in Social Security disability evaluation"); Cowan, 552 at 1186 (holding that the ALJ reasonably adopted opinion of reviewing state agency medical consultant).

Ultimately, it is the ALJ's duty as finder of fact to resolve conflicts in the evidence. *See Richardson v. Perales*, 402 U.S. 389, 399 (1971) (stating that it is the ALJ's responsibility to resolve conflicting medical evidence). Here, the ALJ reasonably exercised this duty by evaluating and weighing all of the medical opinions, explaining in detail why some opinions were entitled to greater deference than others, and the ALJ's RFC determination is supported by substantial evidence in the record. Based on a thorough review of the record and the ALJ's decision, the court affirms the Commissioner's decision that plaintiff was not disabled as of the alleged disability date of December 11, 2012.

**IT IS THEREFORE ORDERED** that the Commissioner's decision is affirmed. Judgment shall be entered pursuant to the fourth sentence of 42 U.S.C. § 405(g).

Dated this 17th day of June, 2015, at Kansas City, Kansas.

s/ Carlos Murguia
**CARLOS MURGUIA**
**United States District Judge**